IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEMETRIUS YVONNE PARKS, <br> d/b/a Parks Pharmacy, Inc., <br><br> Plaintiff, <br><br> v. <br><br> ALABAMA BOARD OF PHARMACY, <br> et al, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CASE NO. 2:20-CV-304-KFP <br> ) <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Demetrius Yvonne Parks, doing business as Parks Pharmacy, Inc., brings this action against the Alabama Board of Pharmacy and five individual Board members, alleging due process and antitrust violations arising from action taken against her by the Board in 2016. Defendants collectively moved to dismiss Plaintiff's Complaint (Doc. 27), Plaintiff filed a response (Doc. 32), Defendants filed a reply (Doc. 33), and both parties filed subsequent sur-replies (Docs. 34, 37). Upon consideration of the parties' submissions and the relevant law, the motion to dismiss is GRANTED for the reasons set forth below.

I.  **BACKGROUND**[1]

Plaintiff is a pharmacist who owns and operates multiple pharmacies in Montgomery, Gadsden, and Hayneville. Doc. 1 at 2–3. In 2015, the Board received a

---

[1] The following history is derived from Plaintiff's Complaint (Doc. 1), exhibits attached thereto, and state court records. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997) (noting that, in considering a motion to dismiss, a court may consider both the contents of a complaint and its attachments); *see also U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811–12 n.4 (11th Cir. 2015)

complaint from the Alabama Medicaid Agency regarding one or more of Plaintiff's pharmacies. *Id.* at 3. Accordingly, the Board initiated inspections of Plaintiff's pharmacies and discovered numerous illegal or improper practices in which Plaintiff and her pharmacies were allegedly engaged.[2] *Id.* Subsequently, the Board charged Plaintiff and her pharmacies with 46 counts of improper conduct, and it held a public hearing on those charges on August 23–24, 2016. *Id.* at 4. Plaintiff received timely notice of the hearing, and she and her legal counsel were present at the hearing. *See* Docs. 1-4, 34 at 11.

Following the hearing, the Board found Plaintiff and her pharmacies guilty of all 46 charges. On October 6, 2016, the Board entered a final order concluding that Plaintiff and her pharmacies had violated the Alabama Pharmacy Practice Act ("APPA"), the Alabama Uniform Controlled Substances Act ("AUCSA"), and various Board rules and regulations. Doc. 1-5. As sanctions, the Board suspended Plaintiff's pharmacy license for five years; ordered Plaintiff to pay an administrative fine of $27,000; placed the permits of several of her pharmacies on probation for five years; and ordered several of her pharmacies to pay administrative fines in varying amounts. *Id.*

In November 2016, Plaintiff filed a complaint in the Montgomery County Circuit Court, seeking judicial review of the Board's final order. *See Parks v. Ala. State Bd. of Pharmacy*, 03-CV-2016-901576.00 (Montgomery Cty. Cir. Ct. Nov. 22, 2016), Doc. 2.

---

("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage.").

[2] For purposes of this Order, the Court need not discuss the specific conduct underlying the Board's charges against Plaintiff. A recitation of the events and activities that led to the charges can be found in *Ala. State Bd. of Pharmacy v. Parks*, 296 So. 3d 316 (Ala. Civ. App. 2019), *cert. denied* (Oct. 11, 2019).

Plaintiff's state court complaint contained many of the allegations in her current Complaint. *See id.* In a subsequent motion to the state court, Plaintiff alleged that the proceedings initiated by the Board violated various provisions of the Alabama Administrative Code, "violated [her] due process rights," and "resulted in a finding contrary to her due process rights." *Id.*, Doc. 24 at 2–3. As relief, Plaintiff sought a court order "overturning all counts of the Board's Final Order of October 6, 2016." *Id.*, Doc. 2 at 5. After reviewing the record from Plaintiff's hearing before the Board, hearing oral arguments from the parties, and reviewing briefs in support of their respective positions, the circuit court determined that Plaintiff engaged in the improper conduct the Board alleged; that "the Board's Final Order and the Finding of Facts set out therein [were] supported by substantial evidence"; and that the Board's conclusions of law based on its findings were correct, with the exception of the sanctions imposed, which the court found too severe. *Id.*, Doc. 143 at 3.

The Board appealed the circuit court's ruling finding the sanctions too severe and, on July 26, 2019, the Alabama Court of Civil Appeals reversed the circuit court's ruling, finding that the sanctions imposed were both statutorily authorized and reasonable. The appellate court stated:

> In this case, the board found that Parks and the pharmacies were guilty of the 46 charges it had alleged against them. The board also found that, in addition to violating the [A]PPA, Parks and the pharmacies were guilty of violating the AUCSA. The circuit court found that the board's findings as to the charges were supported by substantial evidence. The board had the statutory authority to suspend Parks's license, to place the pharmacies on probation, and to impose the administrative fines against Parks and the pharmacies. Under the applicable standard of review, we conclude that the board did not act in an unreasonable, arbitrary, or capricious manner in imposing those sanctions. In reducing the sanctions, the circuit court improperly substituted its judgment for that of the board.

> Accordingly, we reverse the circuit court's judgment and remand the cause to the circuit court for it to enter a judgment reinstating the board's decision in its entirety.

*Parks*, 296 So. 3d at 321, *cert. denied* (Oct. 11, 2019). Thereafter, Parks appealed to the Alabama Supreme Court, which denied certiorari on October 11, 2019. *See Parks*, 03-CV-2016-901576.00, Doc. 173.

Following the Alabama Supreme Court's denial of certiorari, Plaintiff filed suit in this Court on May 7, 2020. *See* Doc. 1. In her Complaint, Plaintiff claims the way the Board handled her inspections, hearing, and sanctions—the same underlying issues previously addressed in state court—violated her due process rights and constitutes anticompetitive and unfair methods of competition in violation of the Sherman Act.[3] *Id.* at 3–7. As relief, she seeks a Court order holding that Defendants' conduct violated due process and the Sherman Act; for all sanctions imposed by the Board to be discharged (that is, for her license to be reinstated, the probationary status of her pharmacy permits to be ended, and all fines and assessments levied against her to be released); $750,000 in compensatory damages; and $5,000,000 in punitive damages. *Id.* at 7-8.

## II.   DISCUSSION

In their motion and subsequent filings, Defendants argue that Plaintiff's claims must be dismissed for numerous reasons, including that (1) Plaintiff's due process claims are time-barred by the applicable two-year statute of limitations; (2) Plaintiff has failed to state

---

[3] Plaintiff also references, in passing, the Federal Trade Commission Act ("FTC Act"). However, the Eleventh Circuit has made clear that "a private right of action . . . does not exist under the FTC Act." *Holmes v. Ocwen Fin. Corp.*, 747 F. App'x 836, 837 (11th Cir. 2019) (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1174 n.5 (11th Cir. 1985)).

an antitrust claim; and (3) the Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine.[4] After careful review of these arguments, Plaintiff's responses to each, and pertinent case law, the Court finds that Plaintiff's claims are subject to dismissal for the reasons discussed below.

### A. Plaintiff's due process claims are time-barred.

Defendants contend that a two-year statute of limitations applies to Plaintiff's due process claims and, therefore, they are time-barred. "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (citation omitted). "In Alabama, the statute of limitations in an action for alleged constitutional violations is two years." *Daniel v. Colee*, No. 2:07-CV-01460, 2008 WL 11424117, at *4 (N.D. Ala. Mar. 20, 2008) (citing *McKissick v. Busby*, 936 F.2d 520, 521 (11th Cir. 1991) and Ala. Code § 6-2-38(l)); *see also McNair*, 515 F.3d at 1173 ("[Plaintiff's] claim was brought in Alabama, where the governing limitations period is two years."). Generally, "the statute of limitations begins to run from the date 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" *Brown v. Ga. Bd. of Pardons & Paroles*,

---

[4] Defendants also argue that (1) Plaintiff's due process claims are barred by res judicata, barred by collateral estoppel, and fail under Federal Rule of Civil Procedure 12(b)(6); (2) Plaintiff's antitrust claims fail because Defendants are entitled to state-action, or *Parker*, immunity; (3) the Board is entitled to Eleventh Amendment sovereign immunity; and (4) the individual Defendants are entitled to quasi-judicial immunity. However, because the Court finds the legal theories above to be dispositive of Plaintiff's claims, it need not address Defendants' additional theories for dismissal.

5

335 F.3d 1259, 1261 (11th Cir. 2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996)).

Plaintiff does not dispute that a two-year statute of limitations applies to her due process claims; she argues that the limitations period did not begin to run until late 2019, when her state court litigation concluded. *See* Docs. 32 at 38, 34 at 27. Plaintiff is incorrect. Plaintiff's due process claims are based solely on the Board's administrative actions against her—that is, the inspections of her pharmacies, the subsequent charges, the hearing on those charges, and the resulting imposed sanctions—and not on anything that took place during her state court litigation. All of the Board's action with respect to Plaintiff concluded at the time of its final order in October 2016. Upon receipt of that order,[5] "the facts which would support a cause of action [were] apparent" to Plaintiff; indeed, immediately thereafter, Plaintiff filed suit in state court, based on the same facts, alleging due process and other violations. *See Parks*, 03-CV-2016-901576.00, Docs. 2, 24. Thus, the statute of limitations on Plaintiff's due process claims began to run, at the latest, in October 2016, when Plaintiff received the Board's final order—not when Plaintiff's state court litigation regarding that order ended.[6]

---

[5] Plaintiff stated in her circuit court complaint that she received the Board's final order on or about October 14, 2016 (*Parks*, 03-CV-2016-901576.00, Doc. 2 at 2) or October 17, 2016 (*Id.* at 4). Both dates fall well outside of the two-year statute of limitations.

[6] *See Arezzo v. City of Hoboken*, 719 F. App'x 115, 118 (3d Cir. 2018) (rejecting plaintiff's argument that his due process claim accrued when the state supreme court denied review, instead finding that it accrued when defendant issued its final administrative decision to terminate his employment; "After [defendant] took final administrative action, [plaintiff] could have filed his Section 1983 claim alleging that [defendant] removed him without providing sufficient due process."); *Foudy v. Indian River Cty. Sheriff's Office*, 845 F.3d 1117, 1123 (11th Cir. 2017) (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (holding a § 1983 action for unlawful termination accrued when the unlawful act, namely the decision to terminate, took place)).

Furthermore, the statute of limitations was not tolled during Plaintiff's state court litigation. In § 1983 actions, just as a court must apply the appropriate state statute of limitations, it must also apply that state's rules for tolling that limitations period. *Bowman v. City of Birmingham*, No. 2:04-CV-3487, 2007 WL 9711415, at *1 n.2 (N.D. Ala. Jan. 29, 2007) (citing *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478 (1980)). In Alabama, the statute of limitations for personal injury actions may be tolled "only if there is intentional misrepresentation or fraud committed by the defendant." *Bowman*, 2007 WL 9711415, at *1 n.2 (citing Ala. Code § 6-2-3; *Dorsey v. U.S. Pipe & Foundry Co.*, 353 So. 2d 800 (Ala. 1977); and *City of Gadsden v. Harbin*, 398 So. 2d 707 (Ala. Civ. App. 1981) (holding that fraudulent concealment of a tort or injury by the defendant will toll the running of the statute of limitations until the tort or injury is discovered or could have been discovered by due diligence)). Plaintiff has not alleged any misrepresentation or fraud by Defendants in this case, intentional or otherwise, that would warrant tolling.

Accordingly, because Plaintiff did not file this action until May 7, 2020, more than three years after the Board issued its final order and the two-year statute of limitations began to accrue, and because there is no basis for tolling, Plaintiff's due process claims are time-barred and must be DISMISSED.

**B. Plaintiff's Complaint fails to state an antitrust claim.**

Defendants argue that Plaintiff has failed to state a valid antitrust claim under the Sherman Act,[7] and, therefore, any purported antitrust claims must be dismissed under

---

[7] The Sherman Act is a federal antitrust law enacted in 1890 to prohibit combinations and conspiracies in restraint of trade (Section 1) and to regulate monopolies (Section 2). *Ramos v. Tomasino*, 701 F. App'x

Federal Rule of Civil Procedure 12(b)(6). Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While detailed factual allegations are not required, a plaintiff must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 (noting that, although a court must accept all factual allegations in a complaint as true at the motion to dismiss stage, it need not "accept as true a legal conclusion couched as a factual allegation")).

With respect to her purported antitrust claim(s), Plaintiff's Complaint contains only vague, conclusory allegations. For instance, she states broadly that Defendants "engag[ed] in purposeful unilateral broadly prohibitive conduct against Plaintiff that monopolizes or attempts to monopolize the market Plaintiff is engaged in . . . amounting to unfair competition." Doc. 1 at 2. She further states that Defendants, "either jointly or severally, have engaged in prohibitive conduct through either direct acts, attempted acts, purposeful, unfair, and illegal practices against Plaintiff that forces her businesses out of the

---

798, 802 (11th Cir. 2017) (citing 15 U.S.C. §§ 1-2). As will be discussed below, it is unclear from the Complaint under which section of the Sherman Act Plaintiff purports to state a claim.

8

pharmaceutical markets amounting to unfair competition . . . ." *Id.* at 5. These statements are mere legal conclusions couched as factual allegations, which are insufficient to state an antitrust claim. *See Twombly*, 550 U.S. at 555; *see also Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985) ("A conclusory allegation of conspiracy to restrain trade will not survive a motion to dismiss.") (citing *Larry R. George Sales Co. v. Cool Attic Corp.*, 587 F.2d 266, 273–74 (5th Cir. 1979)).

The only other allegations in the Complaint purportedly related to an antitrust claim are as follows: (1) Defendants made "damaging recorded statements to other professionals in the business" that they "were trying to set [Plaintiff] up for charges"[8]; (2) Defendants "caused or greatly contributed to the termination of [Plaintiff's] contract with [her] primary vendor"; (3) Defendants "have recklessly taken on conduct that prevented the sale by Plaintiff to a willing buyer of one of her [p]harmacies"; (4) Defendants "intentionally provided or made . . . false statements, or otherwise supplied untrue information regarding Plaintiff on the National Practitioner Data Bank"; and (5) Defendants "illegally confiscated certain medicines belonging to Plaintiff from her stores . . . in violation of due process of law." Doc. 1 at 6-7. First, these allegations are conclusory with no supporting factual

---

[8] For the reasons stated herein, this allegation—even accepted as true—fails to state an antitrust claim. However, the Court notes as an aside that evidence provided by Plaintiff in support of this allegation actually belies it. Indeed, the affidavit of Tony Bodiford (Doc. 32-1), attached to Plaintiff's response to the motion to dismiss, does not indicate that any of the named Defendants "were trying to set [Plaintiff] up for charges," as Plaintiff suggests. Instead, the affidavit simply indicates that "Sue Roxie, Executive Assistant to Board Secretary, Susan Alverson," neither of whom are named as defendants in this action, told Bodiford that he could work as a pharmacist for Parks Pharmacy despite his license being expired and that, thereafter, Inspector Daniels, who is also not a named defendant in this action, arrived to inspect one of the pharmacies and confiscated Bodiford's expired license. Doc. 32-1 at 1. Nowhere does the affidavit state that Defendants were trying to "set [Plaintiff] up," as Plaintiff repeatedly indicates.

allegations, including what specifically occurred, when, and which specific defendants committed each alleged act. *See Lombard's, Inc.*, 753 F.2d at 975 ("The present claim states only a conclusory allegation that there was a conspiracy in violation of the Sherman Act.[] [N]ot only are no facts alleged to demonstrate the conspiracy but the specific participants of the conspiracy are not even identified. Such pleading is inadequate to give the defendant fair notice of [plaintiff's] claim."). Second, and most importantly, Plaintiff alleges injury <u>only to herself</u>, not to competition in general.

As noted above, it is unclear from the Complaint whether Plaintiff purports to state a claim under Section One or Section Two of the Sherman Act. Under either section, however, a plaintiff must allege facts sufficient to demonstrate injury or harm to competition as a whole, rather than to a specific individual. *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1069 (11th Cir. 2004) ("Critically, under both sections [of the Sherman Act], an antitrust plaintiff must show harm to competition in general, rather than merely damage to an individual competitor.") (citing *Am. Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1579 n.8 (11th Cir. 1985) ("Harm to competition is a necessary element of all private antitrust suits under Sections 1 and 2 of the Sherman Act . . . ."); *see also Weight-Rite Golf Corp. v. U.S. Golf Ass'n*, 766 F. Supp. 1104, 1110 (M.D. Fla. 1991), *aff'd sub nom. Weight-Rite Golf v. U.S. Golf*, 953 F.2d 651 (11th Cir. 1992) ("[S]howing merely injury to oneself as a competitor is insufficient [to state an antitrust claim]. [I]njury to a competitor need not result in injury to competition.") (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 421–22 (11th Cir. 1984)); *Fla. Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372, 1375 (11th Cir. 1997)

("[Plaintiff] complains not about higher prices or about injury to competition, but about injury to itself. Thus, [plaintiff] had suffered no antitrust injury.").

Indeed, in *Spanish Broadcasting*, the Eleventh Circuit affirmed a district court's dismissal of a plaintiff's claims under both sections of the Sherman Act because the plaintiff alleged injury or harm only to itself, rather than to competition in general. 376 F.3d at 1069–77. The Court recognized that an antitrust plaintiff must show harm to <u>competition</u> rather than to <u>competitors</u> and that "[h]arm to one or many competitors will not suffice." *Id.* at 1071–72 (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 206 (4th Cir. 2002)). The Court noted that "[e]ven an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws." *Id.* at 1076 (citing *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993)). This includes situations in which one competitor disseminates false information about another. *Id.* at 1072 (citing *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258, 1263 (11th Cir. 1998) ("[Plaintiff's] only claim is [that defendant] acted unfairly by disseminating false information, and this unfair competition in turn harmed [plaintiff's] business. This claim of unfair competition is *not* sufficient to support a claim under § 1 or any other federal antitrust provision.") (emphasis in original)).

Like in *Spanish Broadcasting*, Plaintiff fails to allege any injury or harm to competition in general; she simply alleges that Defendants acted unfairly to <u>her</u>.[9] The

---

[9] Additionally, throughout her filings, Plaintiff repeatedly states that the individual Defendants are both members of the Board and, as pharmacists themselves, active market participants. However, to the extent Plaintiff believes that fact—alone and without any further factual development—establishes the requisite injury or harm to competition, she is incorrect. *See Robb v. Conn. Bd. of Veterinary Med.*, 157 F. Supp. 3d 130, 146 (D. Conn. 2016) ("[T]o . . . hold that [plaintiff's] bare allegations make out an antitrust [claim]

11

Eleventh Circuit has made clear that this is insufficient to support an antitrust claim. Accordingly, even construing Plaintiff's Complaint liberally and accepting her allegations as true, Plaintiff has failed to state an antitrust claim under the Sherman Act.

### C. The Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine.[10]

Finally, Defendants argue that, even if Plaintiff had stated any valid claims that were not time-barred—which she has not—the Court lacks subject matter jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine.[11] The *Rooker-Feldman* doctrine "is a jurisdictional rule that precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Att'y Gen. for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012) (citation omitted). The doctrine derives from 28 U.S.C. § 1257, which "vests authority to review a state court's judgment solely in [the Supreme] Court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). It applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

---

would effectively mean that nearly all actions of an adjudicative body controlled by a majority of industrial participants would constitute an antitrust [claim] *per se*, an unsupportable argument . . . ."); *see also Ala. Power Co. v. Ala. Elec. Co-op., Inc.*, 394 F.2d 672, 677 (5th Cir. 1968) ("The Supreme Court has repeatedly held that, where a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action, no violation of the [Sherman] Act can be made out.") (citations omitted).

[10] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

[11] In their motion, Defendants only address the applicability of *Rooker-Feldman* to Plaintiff's due process claims, not her antitrust claims. However, because the doctrine is jurisdictional, the Court may consider the doctrine's application to all of Plaintiff's claims sua sponte. *See Jackson v. Farmers Ins. Grp./Fire Ins. Exch.*, 391 F. App'x 854, 856–57 (11th Cir. 2010) (affirming sua sponte dismissal of plaintiff's complaint under *Rooker-Feldman* and stating that "a district court may sua sponte consider subject matter jurisdiction at any stage in the litigation and must dismiss a complaint if it concludes that subject matter jurisdiction is lacking").

judgments." *Id.* at 284. The doctrine "operates as a bar to federal court jurisdiction where the issue before the federal court was 'inextricably intertwined' with the state court judgment so that (1) the success of the federal claim would 'effectively nullify' the state court judgment, or that (2) the federal claim would succeed 'only to the extent that the state court wrongly decided the issues.'" *Alvarez*, 679 F.3d at 1262–63 (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009)). In other words, the doctrine bars the losing party "from seeking what in substance would be appellate review of" the state court's judgment. *Ramos*, 701 F. App'x at 801 (citing *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1330 (11th Cir. 2010)).

Here, Plaintiff seeks, at least in part, the same relief based on the same facts and allegations that were adjudicated in her prior state court proceedings. In both cases, Plaintiff has sought to overturn the Board's final order and do away with the sanctions it imposed. And, in both cases, this relief is or was premised on Plaintiff's allegations that Defendants' conduct violated various statutory provisions and her due process rights.[12] Accordingly, for Plaintiff to prevail in this action, this Court would have to find the circuit court was wrong in determining that the Board's factual findings were supported by substantial evidence, the Board's legal conclusions were correct, and the Board acted

---

[12] In her response to the motion to dismiss, "Plaintiff concedes that the issues before this Court [are] identical to the issues at the administrative hearing [before the Board]." Doc. 32 at 34. In her subsequent sur-reply, she admits that she "prayed the [circuit court] to review the legalities of Defendants' actions, and reverse [the Board's] decision." Doc. 34 at 15. She also makes clear throughout her various responses that the issues presented here and the issues considered in state court are premised on the same acts and events.

lawfully.[13] This Court would also have to invalidate the appellate court's judgment directing the circuit court to "reinstat[e] the board's decision in its entirety." In other words, the only way for Plaintiff to succeed here is for this Court to decide that the state courts—which heard the same facts and underlying issues presented here—wrongfully decided those issues. As such, Plaintiff's current claims are inextricably intertwined with her prior state court claims, and this Court lacks jurisdiction over them. *See, e.g., Powell v. Powell*, 80 F.3d 464, 468 (11th Cir. 1996) (holding district court lacked jurisdiction over Plaintiff's constitutional claim because, if a federal district court were to hold in Plaintiff's favor on his federal claim, that holding would "effectively nullify" the state court's judgment).

Notably, *Rooker-Feldman* applies in this instance notwithstanding Plaintiff's purported federal antitrust claims, as those claims are premised on the exact same conduct alleged and considered in the state court litigation.[14] Although *Rooker-Feldman* may generally not apply where a plaintiff did not have a reasonable opportunity to raise her federal claim in state proceedings, *see Casale*, 558 F.3d at 1260, the Eleventh Circuit has nevertheless applied *Rooker-Feldman* when a plaintiff's federal claim amounts to nothing more than "an invitation for the district court to review judgments entered against [her] by . . . state courts." *Stack v. Mason & Assocs.*, 245 F. App'x 920, 923–24 (11th Cir. 2007).

---

[13] As noted above, Plaintiff admits that she "prayed the [circuit court] to review the legalities of Defendants' actions, and reverse [the Board's] decision," but the court found no illegalities and affirmed the Board's decision, determining "that Plaintiff was . . . guilty of the charges filed by Defendants." Doc. 32 at 12-13.

[14] Indeed, Plaintiff states in her complaint and throughout her various responses that Defendants have violated the Sherman Act "by suspending her personal license . . . and business permits and licenses" (Doc. 34 at 6, n.3) and not following proper procedure in conducting her inspections and subsequent hearing (*Id.* at 8, n.4).

In *Stack*, the Eleventh Circuit held that the district court lacked subject matter jurisdiction over Plaintiff's antitrust claims under *Rooker-Feldman*. The court stated:

> Although the Stacks' amended complaint alleges RICO conspiracy violations, Sherman Antitrust Act violations, and common law fraud, all of those allegations are based upon the premise that the defendants either extorted or aided the extortion of unreasonably high costs and fees during the foreclosure of their home and the proceedings to enforce Mr. Stack's credit card debt. As such, the Stacks' amended complaint was without a doubt an invitation for the district court to review judgments entered against them by Florida state courts. However, the Stacks have already filed several motions in state court contesting the amount of attorney's fees awarded, and every state court that entertained one of those motions decided that the fees and costs were both appropriate and reasonable. The Stacks are not entitled to have a federal district court review those determinations. Therefore, the district court did not err in dismissing their complaint based on the *Rooker–Feldman* doctrine.

*Id.*

Similarly, Plaintiff's purported antitrust claims in this case are based on the general premise that the Board's final order and sanctions were unlawful. However, both state courts that reviewed the final order found it was based on substantial evidence; contained correct conclusions of law; and was not unreasonable, arbitrary, or capricious. Plaintiff is not entitled to have a federal district court review those determinations under *Rooker-Feldman*, and Plaintiff cannot circumvent *Rooker-Feldman* by simply wrapping the same facts and issues in a different legal theory. *See id.*; *Staley v. Ledbetter*, 837 F.2d 1016, 1017–18 (11th Cir. 1988) (holding district court lacked jurisdiction to review a county agency's decision that had been upheld by the state court of appeals).[15]

---

[15] *See also Sarhan v. Rothenberg*, No. 07-22818, 2008 WL 2474645, at *11 (S.D. Fla. June 17, 2008) ("A litigant may not circumvent [*Rooker-Feldman*] by instituting a federal action which, although not styled as an appeal, 'amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court.'" (quoting *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003));

Additionally, the fact that the Board was the sole named defendant or respondent in Plaintiff's state court proceedings rather than individual Board members does not render *Rooker-Feldman* inapplicable. The Eleventh Circuit has held that the doctrine may apply even where a party to the federal proceeding was not, and could not have been, a party to the state proceeding. *See Powell*, 80 F.3d at 467. The relevant question is not whether a particular party was present in the prior proceeding, but whether the plaintiff had a "reasonable opportunity" to bring his claim in the state court proceeding. *Id.* at 468 ("The absence of the Secretary from the state court proceeding did not deprive [plaintiff] of an opportunity to press his claim. If [plaintiff] had prevailed on his claim . . . the Secretary's absence would have been immaterial.").

Plaintiff presented to the circuit court her claim that the Board's conduct was unlawful, but the circuit court found that Plaintiff was guilty of the conduct alleged by the Board and that the Board was statutorily entitled to issue sanctions for that conduct. Like in *Powell*, if Plaintiff had prevailed on her claims in state court and the state court had overturned the Board's final order like she asked, the absence of the individual Board members would have been immaterial.

---

*Scannell v. Wash. State Bar Ass'n*, No. 12-00683, 2013 WL 12423276, at *5–6 (W.D. Wash. July 1, 2013) ("Plaintiff may be suing under different causes of action than were chosen in the State Court, but the parties are essentially the same, Plaintiff's goal is the same, and the only real effect of his additional claims, including his RICO and Sherman Anti-Trust Act charges, is to provide additional grounds to overturn [defendant's] decision to disbar him."); *Guerrero v. Bensalem Racing Ass'n, Inc.*, 25 F. Supp. 3d 573, 584 (E.D. Pa. 2014) (holding plaintiff's Sherman Act claims were barred by *Rooker-Feldman* and stating, "Plaintiff's 'manufactured effort' to re-characterize the source of his injuries is insufficient to circumvent the *Rooker–Feldman* bar.") (citations omitted); *Stern v. Nix*, 840 F.2d 208, 212 (3d Cir. 1988) ("Despite this genuflecting to the *Rooker-Feldman* doctrine, closer consideration convinces us that [plaintiff's] complaint is simply a skillful attempt to mask the true purpose of the action, which essentially is to reverse the judicial decision of the Supreme Court of Pennsylvania, in contravention of *Rooker-Feldman*."), *cert. denied* 488 U.S. 826 (1988)).

Accordingly, even if Plaintiff's claims were not subject to dismissal based on the statute of limitations or failure to state a claim, the Court nevertheless lacks subject matter jurisdiction over Plaintiff's claims under *Rooker-Feldman*, and they must be DISMISSED.

## III. CONCLUSION

For the reasons set forth above, it is

ORDERED that Defendants' Motion to Dismiss (Doc. 27) is GRANTED, and this case is DISMISSED.

DONE this 22nd day of June, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE